# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2015 IL App (1st) 122940

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISAIAH BROWN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2940 |
| Filed<br>Rehearing denied | March 11, 2015<br>May 12, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-18719(02); the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Therese Bissell, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. |
| --- | --- |
| | Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Isaiah Brown, appeals from the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)), following his conviction for unlawful use of a weapon by a felon. Brown contends the trial court erred in dismissing his petition without an evidentiary hearing because he made a substantial showing of a constitutional violation where trial counsel was ineffective for failing (a) to investigate and present four witnesses whose testimony would have supported the one defense witness at trial who testified Brown did not have a weapon and (b) to inform Brown of the State's guilty plea offer and the extended sentence he faced if convicted at trial. And, trial counsel was ineffective because she labored under a conflict of interest by also representing Omar Young, another man arrested at the scene and a potential defense witness. Brown further argues the trial court demonstrated bias against him by prejudging his case and asks this court to remand his cause for an evidentiary hearing before a different judge.

¶ 2        We affirm. The trial court properly dismissed Brown's second-stage postconviction petition. The allegations in Brown's petition, with his supporting documentation, fail to make a substantial showing of any constitutional deprivation to warrant a third-stage proceeding when viewed against the full and complete record before us.

¶ 3                                    BACKGROUND

¶ 4        Following a jury trial, Brown was convicted of unlawful use of a weapon by a felon (UUWF). Initially, the court sentenced Brown to 18 years in prison, but following a motion to reconsider, imposed a 13-year sentence. We affirmed his conviction and sentence on direct appeal. *People v. Brown*, No. 1-09-1826 (Oct. 13, 2010) (unpublished order under Supreme Court Rule 23(c)(7)).

¶ 5                                  Trial Proceedings

¶ 6        On September 11, 2008, at 3:30 p.m., Chicago police officer Elizabeth Ayala responded to a neighbor's call that a man was standing on the porch of 167 North Lockwood, Chicago, with a machine gun. Officer Ayala was the first officer to arrive at the two-story brownstone. She saw six men in front of the house–three on the porch (Omar Young, Elliot Harper and Isaiah Brown) and three in front of the porch. Officer Ayala approached the house through the front gate, and as she did, she saw the barrel of an assault rifle sticking out of Harper's shirt. Officer Ayala drew her gun and told the six men to get to the ground.

¶ 7        According to Ayala, Harper and Brown reacted slowly to her instruction. Officer Ayala testified Brown had a 9-millimeter handgun. She watched him as he moved to the side of the

¶ 8 porch, leaned over, and dropped the gun out of his hand. Brown then set the beer bottle he had in his other hand on the stoop before lying on the ground.

¶ 8 Officer Ayala secured Harper's weapon by grabbing the barrel of the gun as she aimed her gun at him.

¶ 9 Officer Ayala testified she never lost sight of the handgun Brown dropped and that she instructed Officer Michael Petrusonis, who had arrived on the scene, to secure the gun. Petrusonis recovered and secured the loaded gun. He showed the gun to Officer Ayala, who confirmed it was the one Brown dropped. The police arrested all six men, including Brown and Harper, and transported them to the police station. The police inventoried the gun and the bullets that had been removed from it. The 9-millimeter gun was never fingerprinted.

¶ 10 On October 1, 2008, the State charged Brown with two counts each of UUWF and aggravated unlawful use of a weapon (AUUW) and codefendant Harper with two counts of AUUW. Harper pled guilty to one count of AUUW; Brown proceeded to a jury trial.

¶ 11 At trial, Officer Ayala identified Brown as the individual who had dropped the loaded handgun recovered by Officer Petrusonis. Petrusonis testified he recovered, secured, and inventoried the handgun and the bullets it contained. Brown moved for a directed finding, which the court denied.

¶ 12 Teona Henry, Brown's first cousin, testified for the defense that Brown did not have a gun that day and that another man, "Omar," dropped the gun the police recovered. Henry testified she lived at 167 North Lockwood, on the second floor, with her grandmother living below her on the first floor. Henry arrived home that day shortly after 3 p.m. and parked her car in the alley. At the same time, Brown, his wife, and their son drove up and parked in the alley as well. Henry testified she walked with Brown and his family through the gangway and entered the yard of their grandmother's home. They observed some men standing on the porch, but Henry testified it was common for men to hang out on the home's porch when no one was home.

¶ 13 Henry testified that when she first arrived at the house, she saw Harper with a gun strapped to his back. She told Brown to tell the men to get off the porch. Brown's wife and son went in the house. Henry followed and was about to walk through the door when the police arrived. She testified that Officer Ayala came through the yard with her gun drawn and instructed everyone to get on the ground. Henry stood still in front of the door. She testified Harper, Young, and a man named Jeremy were on the porch and a few other people were near the steps leading up to the porch, including Brown, who was at the banister near the gangway.

¶ 14 When Officer Ayala arrived, Henry saw Young take a gun out of the front of his pants, put his hand on the side of the banister and drop the gun. Henry testified she never saw Brown with a gun in his hand, only a beer.

¶ 15 Brown did not testify.

¶ 16 The jury found Brown guilty of UUWF. The court denied Brown's motion for a new trial and proceeded to sentencing.

¶ 17 The State argued Brown was "Class X mandatory" because this was his third Class 2 conviction. The State informed the court of Brown's criminal history, including: (1) Class 1 possession of a controlled substance, for which he received probation that was terminated unsuccessfully; (2) Class 2 delivery of a controlled substance, for which he received Cook County boot camp; (3) forgery, for which he received probation that was terminated unsuccessfully; and (4) federal possession of explosive devices, for which he was sentenced to

28 months and 15 days in federal prison. The State argued the sentencing range should be 6 to 30 years and asked that a 6-year sentence be imposed.

¶ 18   Defense counsel argued the sentencing range should be three to seven years, the range for a Class 2 felony, and asked for the minimum. In mitigation, defense counsel argued Brown was a working father of three who supported his family and might have a problem with alcohol. Brown spoke, denying any wrongdoing and stated his trial counsel, Dawn Projansky, "did a good job" and he "believed in her and trusted her judgment to go for a jury trial. She worked so hard for me and, she did her best and I thank her again."

¶ 19   The trial court found the sentencing range to be 6 to 30 years and sentenced Brown as a Class X offender to 18 years' imprisonment.

¶ 20   Defense counsel moved to have the sentence reconsidered, arguing that Class X sentencing was an unauthorized "double upgrade." Following a hearing, the court found Brown was not subject to Class X sentencing. The court held the sentencing range was 3 to 14 years and resentenced Brown to 13 years for UUWF.

¶ 21                                   Direct Appeal

¶ 22   On direct appeal, Brown argued the trial court abused its discretion in sentencing him to an "excessive" sentence of 13 years. We affirmed the sentencing, finding the trial court properly considered the aggravating and mitigating factors presented by the parties and Brown's significant criminal history. *People v. Brown*, No. 1-09-1826 (Oct. 13, 2010) (unpublished order under Supreme Court Rule 23(c)(7)).

¶ 23                           Postconviction Proceedings

¶ 24   Brown retained private counsel, Scott Frankel, and filed his petition for postconviction relief on June 30, 2011. In his initial petition, Brown argued his trial counsel, Dawn Projansky, was ineffective for failing to (1) communicate the State offered a three-year sentence in exchange for Brown's guilty plea, (2) fully advise Brown of the extended sentence he faced, because of his background, if convicted, and (3) conduct a reasonable investigation and present the testimony of potential witnesses–Stephanie Adams, Omar Young and Arnold Misher–who would have testified Brown never possessed a gun during the incident.

¶ 25   As support, Brown attached his own affidavit, as well as one from Projansky, and potential witness Arnold Misher. He also included a handwritten statement captioned "affidavit" attributed to Stephanie Adams.

¶ 26   Brown attested he told trial counsel that "Omar Young was the person that had the 9 mm on the night in question" and that "Young would testify to him having and tossing the gun on the night on September 11, 2008. My lawyer told me he is a trouble maker so she won't call him to testify at my Trial." Brown claimed trial counsel "never brought me a plea offer of 3 years by the State, or made no mention of this." Brown did not state, however, that he would have accepted the offer.

¶ 27   In her affidavit, Projansky stated that throughout her representation of Brown, she "was concerned about the fact that he was on federal parole." She "often spoke to" Brown's federal probation/parole officer and the attorney appointed to represent him in his federal case about the consequences of Brown's state criminal case. Projansky claimed that "[b]eing aware of the serious consequences of entering a plea of guilty in [defendant's] State case[,] a plea offer was

rejected and the case proceeded with a jury trial." She could not recall any specific conversations with Brown "that his criminal background could place him in the situation that he could receive an extended sentence if found guilty" at trial. She claimed her "focus was on the federal consequences of entering a guilty plea" and that at "no time did [defendant] state that he was interested in accepting the State's offer of 3 years IDOC." She claimed that any plea agreement would have resulted in violation of his federal parole and led to incarceration in federal prison.

¶ 28    In his affidavit, Arnold Misher attested that on September 11, 2008, he was on his mother's front porch at 163 North Lockwood and saw several men on or near the front porch next door at 167 North Lockwood. Misher saw Brown, along with two women and a child, exit a car and walk up to the house. Brown was drinking something in a brown paper bag. As he approached the house, Brown told the men to move away. Then, a police car pulled up and the men standing around the house scattered. An officer got out of her car, drew her weapon and ordered everyone to the ground. Misher heard Brown try to explain that it was his grandmother's house, but the "officer told him to shut up and snatched a bottle that he was holding out of his hand and made him get on the ground." Misher saw the men on the porch lie down and then the officer walk up to one of them and grab a gun from under his shirt. While Brown was out on bond, Misher spoke to him and Projansky and indicated his willingness to be a witness at Brown's trial.

¶ 29    The document Brown characterized as Stephanie Adams' "affidavit" is not notarized, dated, or signed. Adams stated she was at a friend's house on Lockwood when she looked out the window and saw a man wearing a white shirt, standing in front of a gate, with a machine gun. Adams called the police. The police arrived and arrested all of the men on the porch. Her statement does not mention Brown or any dates or times. She does not indicate whether she would be willing to testify at Brown's trial or during postconviction proceedings.

¶ 30    In January 2012, counsel amended Brown's postconviction petition and filed additional supporting evidence. In his amended petition, Brown alleges he is innocent given the affidavit of Omar Young. Brown also alleges his trial counsel was ineffective for failing to present the testimony of Young at trial and that Young's testimony would have established that Brown never possessed the weapon recovered at the scene because "Young admits that he possessed the weapon." Brown further alleges counsel was ineffective because she labored under a conflict of interest by representing Omar Young as well as Brown. Brown also included the allegations from his original petition–his claims that trial counsel was ineffective for failing to: (1) communicate the State's three-year plea offer, (2) advise him of the potential extended sentence he faced if convicted, and (3) interview available witnesses: Adams, Misher and Young, who would have corroborated Henry's trial testimony that Brown did not have a gun.

¶ 31    Brown attached six supporting documents to his petition. The three affidavits and Adams' statement, which were attached to his original petition, as well as two additional "affidavits"–from Omar Young and Curtis Brown.

¶ 32    Similar to Adams' statement, the document captioned "Affidavit of Omar Young" is not notarized. It states that at 3:30 p.m. on September 11, 2008, Young was on the porch at 167 North Lockwood when a female officer approached and ordered him to the ground. Brown was present and had a beer in his hand. Young never saw Brown with a gun in his hand and claimed the gun the police found "was not Isaiah Brown's gun." Young indicated "[I] would have testified at Curtis Brown's trial if I had been asked to testify. At the time of the trial I was

represented by Dawn Projansky. She told me that she would not put me on the witness stand because of the case I was fighting at the time." (In the document, the typewritten "Curtis" has a line drawn through it, but there are no initials or any other mark next to the strikethrough.)

¶ 33    In his statement, also entitled "Affidavit," but not notarized, Curtis Brown claimed he was in the area that afternoon to sell shoes. He recalled a female officer approaching him and ordering him inside the gate at 167 North Lockwood and to the ground. Curtis claims Brown was on the scene with a beer in his hand, but Curtis never saw him with a gun. Curtis states he would have testified on behalf of Brown at trial if he had been asked.

¶ 34    As support for his amended petition, Brown also included a compact disc containing audio recordings of telephone conversations he had with Projansky on June 27, 2009, and January 30, 2011. In their final conversation, after counsel had prepared her postconviction affidavit, Brown called counsel to express his disappointment in her affidavit. Projansky explained that she recalled she had informed him of the State's plea offer of three years and he had refused to accept it because of his federal case. She said her recollection was consistent with her records of her representation of him in this matter. She stated they feared that a guilty plea in this case would have led to a greater federal prison sentence. She informed Brown she never would have made the decision to reject the State's offer without his consent because it was his decision and she would never force that decision on a client. When Brown complained about the content of her affidavit, she explained that she refused to put statements in her affidavit that he wanted her to say. She told Brown the affidavit was her recollection and that she would not lie in it and risk losing her law license. Projansky told Brown he could choose not to use her affidavit if he did not like it.

¶ 35    The State moved to dismiss Brown's amended postconviction petition, arguing Brown's claim of actual innocence based on Omar Young's alleged culpability failed because Young's testimony was not newly discovered–Young had been available to testify at trial. The State informed the court that a charge of misdemeanor reckless conduct against Young had been dismissed on September 9, 2008, and the case could not have been reinstated after February 15, 2009 (when the 160-day period of reinstatement expired). Brown's trial began on May 6, 2009. The State further argued that Young's proposed testimony could not support a claim of actual innocence due to Young not saying what Brown's petition claims Young said–*i.e.* that Young possessed the gun. In his statement, Young never acknowledged that he had the gun (his statement only says Brown did not have the gun) and his proposed testimony would have conflicted with the actual testimony of defense witness Henry who testified at trial that "Omar" dropped the gun the police recovered.

¶ 36    The State further argued that Brown's claim that trial counsel did not tell him of the State's plea offer should be dismissed because it was not true. The State argued Projansky's affidavit rebutted Brown's claim. The State also argued Brown's claim that Projansky failed to tell him he could receive an extended sentence based on his background should also be dismissed because Brown failed to offer any support for it. The State argued Brown's claim that counsel was ineffective for failing to investigate the potential defense witnesses was insufficiently supported and a matter of trial strategy. Lastly, the State contended that Brown's conflict of interest claim likewise fails because there was no evidence to support the claim that Projansky represented Young and Brown at the same time.

¶ 37    During defense counsel's argument regarding whether Brown knew of the State's plea offer, the court interjected, stating:

"What am I supposed to do if I tell you there was no way on earth–first, I distinctly recall it. You're right, I mean I didn't leave that on the record. But, secondly, I got to tell you that it's a matter of course in this courtroom, that every single person prior to the selection of a jury in a case, is informed of whatever the last offer was and given one last opportunity to review, accept or reject it.

It's an affidavit of your client. You know, I'm putting the cart before the horse and indicating my view, it's perjurious for [Brown] to say that he was never told the [State's offer]. I could tell you with absolute certainty that he was not rushed to trial, absolute certainty.

* * *

I know my not leaving it on the record makes it very hard for you. I apologize for that. That's my error."

¶ 38    Concerning whether Brown was informed that he could face an extended sentence, defense counsel asked the court to take judicial notice of the fact that Brown "ended up taking 36 months concurrent time on that [federal] parole violation after this Court sentenced him." Defense counsel went on to argue that the strongest basis for Brown's ineffective assistance of counsel claim was his allegation that Projansky labored under a conflict of interest by representing him and Young at the same time.

¶ 39    The trial court granted the State's motion to dismiss Brown's postconviction petition at the second stage. The court found Projansky was not ineffective for failing to call Brown's proposed witnesses. The court found Brown's claim that his trial counsel did not communicate the State's plea agreement to him conflicted with what Brown said in the recordings of his telephone conversations with Projansky. The court also stated that it knew Brown had been informed of the State's plea offer because it was the court's policy to make sure defendants were aware of any pending offer before trial and what sentence he or she faced if convicted:

"I'm most antagonized by the issue that he asserts that he never received the offer of three years, which is complete balderdash. * * * It fails because I know that he received the offer. It fails because I know that he didn't accept the offer. It fails because I know that an offer was made in this case, and it also fails because in every single case which I've ever selected a jury, with the exception of capital cases or first degree murder cases, I have a conversation with individuals, particularly people in Mr. Brown's circumstances that are facing a minimum period of incarceration should they be convicted regarding what the sentencing parameters are or what the offer is.

* * *

* * * [T]he issue of whether or not [the petition] should be granted or should we have a hearing on the post conviction petition of whether or not he received an offer is denied."

The court also agreed with the State that Projansky's representation of Omar Young ended "before the date of trial, so that there was no conflict of interest."

¶ 40    The trial court dismissed Brown's petition and informed him of his right to appeal. Brown interrupted and addressed the court:

"[Ms. Projansky] told me that I was only looking at three to seven years. All the extra time, I would been gone for three and half-years. * * * I wasn't aware that I was looking at all that time."

The court responded:

> "This is another example of an absolute lie on your part. I shared this with you at the time of your hearing. I recall this conversation with you. You have an absolute fear of the truth. Because I can tell you with complete certainty that I told you then, and I will tell you one last time, he knew exactly what he was going to receive on this case.
>
> He was told exactly what he would receive if he was convicted by a jury. He was told these things in exact certainty. I could tell you that it's happened on every single jury that's been selected in this courtroom with the exception of first degree murder and sexual assault cases."

¶ 41   Brown appeals, arguing the trial court improperly dismissed his petition and he is entitled to an evidentiary hearing on his claims that he was deprived of his constitutional rights during the trial proceedings.

¶ 42                                                    ANALYSIS

¶ 43   The Illinois Post-Conviction Hearing Act (Act) provides a process by which a criminal defendant may challenge his or her conviction. 725 ILCS 5/122-1 *et seq.* (West 2010). A postconviction action is a collateral attack on a prior conviction and sentence, "not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). To be accorded relief under the Act, a defendant must show there was a substantial deprivation of his or her constitutional rights in the proceedings that produced the conviction. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). The Act "provides for postconviction proceedings that may consist of as many as three stages." *Id.* at 472. During the first stage, the trial court has 90 days to summarily dismiss any "frivolous" petitions. *Id.* If not dismissed, the petition advances to the second stage. *Id.* During second-stage proceedings, counsel may be appointed for the defendant and the State may move to dismiss the petition or answer its allegations. *Id.* If the petition is not dismissed at the second stage, it advances to the third stage and an evidentiary hearing is held. *Id.* at 472-73. Brown's petition was dismissed at the second stage on the State's motion.

¶ 44   A second-stage dismissal of a defendant's petition presents a legal question we review *de novo*. *People v. Whitfield*, 217 Ill. 2d 177, 182 (2005). The relevant question raised during a second-stage postconviction proceeding is whether the petition's allegations, supported by the trial record and accompanying affidavits, demonstrate a substantial showing of a constitutional deprivation, which requires an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). All well-pled facts in the petition and affidavits are taken as true, but assertions that are really conclusions add nothing to the required showing to trigger an evidentiary hearing under the Act. *Id.*

¶ 45   The Act does not provide a defendant with an opportunity to retry the case. *People v. Evans*, 186 Ill. 2d 83, 89 (1999). Issues that could have been raised on direct appeal, but were not, are procedurally defaulted. *People v. Williams*, 209 Ill. 2d 227, 233 (2004). As a reviewing court, we can "affirm the trial court on any basis supported by the record." *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003). We review the trial court's judgment, not its reasoning. *Id.*

¶ 46                            Ineffective Assistance of Counsel Claims

¶ 47          Brown argues that the allegations of his petition, taken as true, make a substantial showing that he was deprived of his constitutional right to effective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, a defendant must establish both that his trial counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced his or her case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong an attorney "has a duty to conduct both factual and legal investigations on behalf of [his or her] client." *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (2001). To establish prejudice, a defendant must show that but for counsel's deficiency, "there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 11 (2008). The defendant must show "actual prejudice" based on the evidence and record, "not mere speculation as to prejudice." *People v. Bew*, 228 Ill. 2d 122, 135 (2008).

¶ 48          We are mindful that in assessing allegations of ineffective assistance of counsel, a "defendant is entitled to effective, not perfect, representation [citation], and [that] this is to be determined from the totality of counsel's performance." *People v. Ingram*, 382 Ill. App. 3d 997, 1006 (2008). Our supreme court has instructed "that a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his [or her] perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). Mistakes in trial strategy or errors in judgment do not automatically render counsel's representation constitutionally deficient. *Id.* at 355-56. Rather, counsel must utterly fail to conduct any meaningful adversarial testing of the State's case. *People v. Patterson*, 217 Ill. 2d 407, 441 (2005).


¶ 49                                 Failure to Present Witnesses

¶ 50          Brown argues he made a substantial showing that trial counsel was ineffective for failing to interview or present his proposed witnesses at trial. He contends that their affidavits, which must be taken as true, show their testimony would have supported the defense theory at trial that Brown did not possess the gun that was recovered from the side of the porch, someone else did. Brown argues that based on the proposed witnesses' allegations in their affidavits, counsel's failure to present their testimony at trial constituted deficient representation.

¶ 51          The State responds that the trial court properly dismissed Brown's amended postconviction petition at the second stage of the proceedings because Brown failed to establish that his trial counsel's decision on the witnesses was not trial strategy or that the result of the trial would have been different had the witnesses testified for the defense. The State further contends Brown failed to offer adequate evidentiary support for his claim because only one of his four potential witnesses–Misher–provided a proper affidavit. The State argues the statements attributed to Omar Young, Curtis Brown, and Stephanie Adams are not notarized and, thus, not affidavits.

¶ 52          We find Brown's claim that counsel was ineffective for her failure to call his proposed witnesses lacks the requisite evidentiary support. To sustain an ineffective assistance of counsel claim for counsel's failure to investigate or present a witness, the defendant's allegation must be supported by an affidavit from that witness that contains the witness's proposed testimony. 725 ILCS 5/122-2 (West 2010); *People v. Enis*, 194 Ill. 2d 361, 380 (2000); see also *People v. Dean*, 226 Ill. App. 3d 465, 468 (1992) (when defendant attacks

competency of trial counsel in postconviction petition for failure to call or contact certain witnesses, defendant must attach affidavits from those witnesses). "In the absence of such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary." *Enis*, 194 Ill. 2d at 380.

¶ 53 The purported affidavits by Young and Curtis Brown were not notarized. Adams' statement was not notarized, as well as unsigned and undated. Brown failed to offer any explanation as to why his proposed witnesses could not have their affidavits notarized. The State contends because of this failure, Brown did not satisfy the pleading requirements of section 122-2 of the Act. If a defendant's petition does not comply with the evidentiary requirements of section 122-2, it must at least provide an explanation as to why the affidavits were unobtainable. *People v. Collins*, 202 Ill. 2d 59, 66-68 (2002). The purpose of a section 122-2 affidavit is to "show[ ] that the verified allegations are capable of objective or independent corroboration." *Collins*, 202 Ill. 2d at 67. Subsequently, however, the supreme court has made clear that *Collins* does not apply "beyond the first stage of the proceedings." *People v. Hall*, 217 Ill. 2d 324, 332 (2005); see also *People v. Clark*, 2011 IL App (2d) 100188, ¶ 33; *People v. Barkes*, 399 Ill. App. 3d 980, 987 (2010) (holding affidavit requirement of section 122-2 does not apply beyond first stage of postconviction proceedings).

¶ 54 The State did not raise the issue of the affidavits' nullity below. But, our review of the second-stage dismissal of a postconviction petition is *de novo* and in doing so, we can affirm on any basis supported by the record. See *Lee*, 344 Ill. App. 3d at 853. We find, however, the State has forfeited this issue by its failure to raise it before the circuit court, allowing defendant the chance to correct the technical defect if possible.

¶ 55 Construing the notarization requirement as a technicality, we find the affidavits Brown offered in support of his allegations are still insufficient to support his allegation that trial counsel was ineffective for failing to call each of his proposed witnesses to testify. Brown cannot overcome the strong presumption that counsel strategically decided which witnesses to call to testify at his trial and he has not made a substantial showing of prejudice based on counsel's decision not to call any of his proposed witnesses.

¶ 56 Projansky's decision not to call Adams, Misher, Young or Curtis Brown falls squarely within the realm of sound trial strategy, and the proposed witnesses' affidavits, in addition to the record, do not overcome the strong presumption of sound trial strategy. Trial counsel's defense strategy was to show the State could not meet its burden of proving Brown's guilt beyond a reasonable doubt based solely on Officer Ayala's testimony. Counsel vigorously cross-examined Ayala to establish that the chaotic circumstances of the encounter (six men, one with a machine gun strapped to his back) made it unlikely that Officer Ayala could properly focus her attention on Brown. To further bolster the defense theory, trial counsel called Brown's cousin Henry. Henry testified not only that Brown did not have a gun (which is all the proposed witnesses would have said), but also that "Omar" had the gun Ayala claimed defendant dropped.

¶ 57 Regarding the specifics of the proposed witnesses' statements, Adams never mentions Brown in her affidavit. In his brief, Brown mischaracterizes her statement by saying she attested Harper was the "only man with a gun that day." Her statement is that she called the police when she saw a man with a machine gun standing on the porch. Her silence as to

defendant cannot be taken to affirmatively mean she did not see Brown with a gun. Nothing in her affidavit indicates she would have testified favorably on behalf of Brown.

¶ 58    Misher indicates in his affidavit only that he saw Brown carrying a bottle. He says nothing either way about whether Brown had a gun. Misher's recollection does not conflict with Officer Ayala's testimony. She too saw Brown with a bottle of beer in his hand. Misher's proposed testimony would not have directly contradicted the evidence offered at trial and, therefore, Brown is unable to show he was prejudiced by trial counsel's failure to call Misher to testify. See *Bew*, 228 Ill. 2d at 135 (defendant must show actual prejudice, not mere speculation as to prejudice).

¶ 59    In his affidavit, Curtis Brown states he did not see defendant with a gun. Based on the undated and unnotarized statement, it is not clear when and how defendant became aware of Curtis Brown's presence on the scene that day. Without this explanation, Brown is unable to support his claim that trial counsel was ineffective for failing to investigate and call Curtis Brown as a witness.

¶ 60    Lastly, regarding Omar Young, trial counsel decided not to call him because she believed he would not be a helpful witness. Projansky reiterated her sentiments to Brown during their phone conversation about her postconviction petition affidavit. Young's proposed testimony was not consistent with Henry's testimony. Henry said "Omar" dropped the gun the police recovered. In his affidavit, Young says he only saw a beer in Brown's hand, but Young does not admit the gun recovered was his, rather than Brown's. Based on counsel's explanation for not calling Young and Young's proposed testimony that would have contradicted Henry, a more credible witness for the defense, Brown has not met the requirements under *Strickland* to show counsel was ineffective for failing to call Young to testify on his behalf.

¶ 61    Furthermore, the testimony of Brown's proposed witnesses would have been cumulative. See *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009) ("[e]vidence is considered cumulative when it adds nothing to what was already before the jury"). Adams' and Misher's testimony would have added nothing to the case. Adams' statement was extremely limited, *i.e.*, that she saw Harper standing on the porch with a machine gun. Misher's statement includes that he saw Brown carrying a bottle of beer. Misher does not say either way whether Brown had a gun. Misher's testimony likewise would have added nothing new and, worse, could have harmed the defense by bolstering the credibility of Officer Ayala's recollection.

¶ 62    Neither Curtis Brown nor Omar Young offers the exculpatory evidence Brown tries to convince us they do. Curtis Brown's statement is short and vague. He was only briefly on the scene and we do not know what his vantage point was or how defendant found out about him. Omar Young states Brown did not have a gun, but he does not claim it was he who did. Young's statement does not exonerate Brown; in fact, it contradicts defense witness Henry, who testified "Omar" is the man who dropped the gun Officer Petrusonis recovered. Accordingly, none of the statements from the potential witnesses Brown offered are capable of producing a different outcome on retrial and, as such, cannot sustain Brown's claims of ineffective assistance of counsel where no substantial showing of prejudice has been made.

¶ 63    Even assuming all of Brown's supporting documentation to be true, the facts presented do not warrant further proceedings. Brown fails to meet both prongs of *Strickland* and, thus, the trial court properly dismissed his claim of ineffective assistance of counsel for counsel's alleged failure to investigate and call potential defense witnesses to testify on Brown's behalf

without an evidentiary hearing.

¶ 64                              Plea Offer and Extended Sentencing

¶ 65        Brown argues he is entitled to an evidentiary hearing on his contention that trial counsel performed deficiently by neglecting to inform him of (1) the State's three-year guilty plea offer and (2) the extended sentencing range he faced if convicted. As support for his claims, Brown attached his own affidavit, Projansky's affidavit, and an audio recording of telephone conversations he had with counsel.

¶ 66        "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." (Internal quotation marks omitted.) *People v. Hale*, 2013 IL 113140, ¶ 15. To show prejudice based on counsel's alleged error, a defendant must show that he would have accepted the plea offer but for counsel's erroneous advice, that the State would not have rescinded the offer, and that the trial court would have accepted it. *Hale*, 2013 IL 113140, ¶ 19.

¶ 67        The trial court acknowledged the record does not contradict Brown's allegations. "I know my not leaving it on the record makes it very hard for you. I apologize for that. That's my error." The court, however, independently recalled counsel communicating the State's offer to Brown.

¶ 68        The telephone recordings also confirm that although trial counsel does not independently recall specifically communicating the offer to defendant (as she stated in her affidavit), it is her practice to always inform defendants of any plea offer. During their telephone conversation on January 30, 2011, Projansky informed Brown she never would have rejected an offer from the State without discussing it with him first. Her recollection was that Brown said he would not accept any plea offer because of the ramifications it would have on federal charges that were pending. During their conversation, Brown expressed dissatisfaction with Projansky's affidavit, particularly with respect to his contention that she did not relay the State's plea offer. Projansky reminded Brown that she reviewed her records before preparing her affidavit and that it was based on her recollection.

¶ 69        In dismissing Brown's petition, the trial court stated it had reviewed the telephone recording of Brown's conversations with Projansky. The court held that based on the conversations, Brown knew of the State's offer. The court further stated that it was certain it had ensured Brown was aware of the plea offer. "I know that he received the offer." The court went on to explain that in all jury cases, with the exception of capital cases or first degree murder cases, the court always has a conversation with the individual defendant about the "sentencing parameters *** or what the offer is."

¶ 70        Based on the record before us, Brown is unable to show counsel performed deficiently by failing to relay the State's plea offer.

¶ 71        Even if we were to accept Brown's claim that counsel never informed him of the State's plea offer, his ineffective assistance of counsel claim would still fail because he is unable to show prejudice. Brown failed to allege in his petition or state in his affidavit that he would have accepted the State's offer, and the record rebuts any suggestion Brown would have been willing to plead guilty. In fact, when he made the suggestion during his recorded telephone conversation with Projansky, she told him that was not true and reminded him that their concern was always the federal ramifications of his state case. She further stated that he always

- 12 -

insisted that he was not guilty and intended to fight the charges. For the first time in his appellate brief, defendant claims he would have accepted the State's plea offer. Projansky's affidavit and the recordings of her telephone conversations with Brown show they feared the consequences of pleading guilty, regardless of the sentence. Based on the record, Brown is unable to make a substantial showing that there was a reasonable probability that he would have accepted the plea offer and that if he had, the court would have accepted it in light of the severity of the sentence the trial court ultimately imposed (13 years vs. 3 years with the plea agreement). See *Hale*, 2013 IL 113140, ¶ 19. Brown's plea related to ineffective assistance of counsel claim fails to meet the requirements of *Strickland* and, thus, the trial court properly dismissed it.

¶ 72    Likewise unavailing is Brown's claim that counsel was ineffective for failing to inform him of the sentence he faced if convicted. Brown appears to be arguing that had it not been for counsel's failure to inform him of the extended sentence he faced, he would have accepted the State's plea offer. The record, however, belies such a contention. At the time Brown rejected the State's offer, trial counsel (and defendant) believed that if he pled guilty, he would open himself up to federal consequences. We find no well-pled facts in Brown's petition to support his claim that Projansky provided deficient performance even if she omitted to tell him that he faced an extended sentence based on his background, particularly where the trial court recalled Brown being informed of the sentence he faced.

¶ 73    Given his background, Brown faced a minimum of 3 years and a maximum of 14; Brown ultimately received 13 years. 720 ILCS 5/24-1.1(e) (West 2010) (extended sentence for subsequent violations). In his postconviction petition, Brown alleges his trial counsel never informed him he faced more than the normal Class 2 sentencing range of three to seven years.

¶ 74    Counsel has a constitutional obligation to inform the defendant of the minimum and maximum sentences that may be imposed and the ramifications of accepting or rejecting a plea offer. *People v. Curry*, 178 Ill. 2d 509, 528 (1997). The United States Supreme Court issued *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012), which both addressed issues of ineffective assistance of counsel similar to those raised in *Curry* and the case before us. As to the factors required to meet a *Strickland* showing of prejudice, the Supreme Court specifically stated that "[d]efendants must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 566 U.S. at ___, 132 S. Ct. at 1409; see also *Cooper*, 566 U.S. at ___, 132 S. Ct. at 1384-85.

¶ 75    His affidavit or that of his trial counsel does not support Brown's claim. Brown raised the allegations in his petition, but just as the State argued in its motion to dismiss, this allegation, absent evidentiary support, is insufficient to survive dismissal under section 122-2 of the Act. *People v. Delton*, 227 Ill. 2d 247, 255 (2008) (dismissal based on noncompliance with section 122-2).

¶ 76    Even if we overlook Brown's failure to include this claim in his affidavit, his argument still fails. Brown contends trial counsel's argument during sentencing for a "normal class 2 sentencing range" (three to seven years) shows counsel failed to inform him of the proper sentencing range he faced (an extended term based on his background). We agree with the State that trial counsel's efforts to persuade the court to impose a lesser sentence after trial does not show Projansky failed to inform Brown of the fact that his prior convictions made him

subject to a sentence of 3 to 14 years before trial (or that the trial court did). The trial court rejected Brown's contention, relying on its independent memory that Brown was informed of the sentencing parameters.

¶ 77    Putting aside the issue of whether counsel informed Brown of the possibility of an extended sentence, we proceed directly to the issue of prejudice. See *Strickland*, 466 U.S. at 697; *People v. Albanese*, 104 Ill. 2d 504, 527 (1984) (we may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance). Even if we accept that counsel's advice was deficient, defendant has failed to show any resulting prejudice. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer. *People v. Hale*, 2013 IL 113140, ¶ 18.

¶ 78    Brown does not meet the initial requirement in *Frye* or *Cooper* to establish the prejudice prong, *i.e.*, that there is a reasonable probability that he would have accepted the plea offer had he been afforded effective assistance of counsel. Brown's claim that he would have pled guilty had he known that he faced an extended sentence, standing alone, amounts to no more than " 'subjective, self-serving [testimony,] *** insufficient to satisfy the *Strickland* requirement for prejudice' " (*Curry*, 178 Ill. 2d at 531 (quoting *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988))), and in light of his statements to counsel that he was innocent and their fears of the federal consequences of a plea, is directly contradicted by the record. The trial court did not find Brown's contention credible. The court's determination is not against the manifest weight of the evidence and, therefore, will not be disturbed on appeal.

¶ 79    Brown's self-serving claim that he would have accepted the State's plea offer had counsel informed him of the extended sentence he faced is unsupported by the record and was denied by Ms. Projansky during their phone conversation. Because Brown is unable to make this initial showing as required by *Frye* and *Cooper*, he cannot establish the prejudice prong of *Strickland*. The trial court properly rejected Brown's ineffective assistance of counsel claim.

¶ 80                              Conflict of Interest Claim

¶ 81    Lastly, Brown argues he pled sufficient facts to warrant an evidentiary hearing on his claim that trial counsel labored under a conflict of interest by representing Omar Young at the same time she represented him.

¶ 82    The sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Morales*, 209 Ill. 2d 340, 345 (2004). "Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988). Illinois recognizes two classes of impermissible attorney conflicts of interest: (1) *per se* conflicts, requiring automatic reversal regardless of whether prejudice can be shown and (2) "potential," "possible," or "actual" conflicts requiring reversal if the conflict "adversely affected counsel's performance." (Internal quotation marks omitted.) *People v. Gacho*, 2012 IL App (1st) 091675, ¶ 29 (quoting *Spreitzer*, 123 Ill. 2d at 17-18).

¶ 83    Brown alleges that Projansky labored under a potential or actual conflict, not a *per se* one and that he never waived the conflict of interest. An attorney's joint representation of criminal

codefendants is not a violation of the constitutional guarantee of conflict-free representation "merely by virtue of such representation." *People v. Taylor*, 237 Ill. 2d 356, 375 (2010). To prevail on a claim of ineffective assistance of counsel premised on counsel's joint representation of codefendants, a defendant must show that "an actual conflict of interest" occurred at trial. *Id.* at 375-76. " 'What this means is that the defendant must point to some specific defect in his counsel's strategy tactics, or decision making attributable to the conflict.' " *Id.* at 376 (quoting *Spreitzer*, 123 Ill. 2d at 18).

¶ 84    Brown alleges he pled sufficient facts to warrant an evidentiary hearing by presenting Young's affidavit in which Young claimed that Projansky represented him at the time of Brown's trial and she told him she would not put him on the stand to testify on behalf of Brown because of his case. Brown argues Young's testimony was significant because it would have bolstered his defense that he did not have a gun.

¶ 85    Brown argues the trial court erred when it considered the State's argument that Young's case was over by the time of Brown's trial to find Brown presented insufficient evidence for his conflict of interest claim to advance to an evidentiary hearing. Brown contends the State's claim raises a factual dispute concerning whether Projansky's representation of Young compromised her representation of Brown and, therefore, an evidentiary hearing was necessary to resolve the factual dispute raised by Brown's allegation.

¶ 86    Courts may take judicial notice of matters which are commonly known or of facts which, while not generally known, are readily verifiable from sources of indisputable accuracy. *People v. Davis*, 65 Ill. 2d 157, 161 (1976). The procedural proceedings of Omar Young's case were made a part of the court record by the State. The accuracy of the State's statements has not been directly challenged, instead, Brown merely argues that it was improper for the court to accept the State's contention in light of his claim that trial counsel labored under a conflict of interest. Because Brown has not offered any evidence to show the State is incorrect in its belief that Omar Young's case was dismissed on September 9, 2008, and the 160 days to reinstate ran before the start of Brown's trial, the accuracy of the State's statements has not been challenged and, therefore, may be properly judicially noticed. See *People v. Jackson*, 182 Ill. 2d 30, 66 (1998) ("a court will take judicial notice of its own records").

¶ 87    Following review of the record, we cannot say the trial court's finding that Brown failed to establish a substantial violation of his constitutional right to conflict-free representation was in error. Accordingly, we uphold the trial court's dismissal of Brown's postconviction petition.

¶ 88                                    CONCLUSION

¶ 89    Even assuming that the facts set out in Brown's petition are true, we hold Brown has failed to present sufficient evidence in support of his claims and, therefore, an evidentiary hearing is not required. The court properly dismissed Brown's petition for postconviction relief at the second stage.

¶ 90    Affirmed.