2024 IL App (1st) 211270-U

No. 1-21-1270

Order filed January 16, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 20259 |
| | ) | |
| STEVEN PODKULSKI, | ) | Honorable |
| | ) | Michael J. Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly entered a summary dismissal of defendant's *pro se* postconviction petition where he failed to state a claim that he was arguably denied effective assistance of trial and appellate counsels.

¶ 2    Defendant Steven Podkulski appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2020)). On appeal, defendant contends that he raised arguably meritorious claims that (1) trial counsel was ineffective for not presenting a certain witness and not impeaching another witness with

inconsistent grand jury testimony, and (2) appellate counsel was ineffective for failing to challenge the admission of an improper lay opinion. For the following reasons, we affirm.

¶ 3    Defendant was convicted of the first degree murder of Jennifer Boyd. The facts of the case are detailed in this court's order on direct appeal. See *People v. Podkulski*, 2022 IL App (1st) 192149-U. Accordingly, we recount only the facts from our order on direct appeal, along with other evidence adduced at trial, that are necessary to resolve the present appeal.

¶ 4    At trial, the evidence established that defendant and James Goble, who committed burglaries together, traveled to a Public Storage in Sterling Estates, Illinois, on August 3, 2002, with Lauren Munch and Nancy Abeyta to rent a locker. Defendant walked to the lockers with Boyd, an employee of Public Storage, while Munch and Abeyta stayed with the vehicle. According to Goble, defendant exited the locker area after 5 to 10 minutes with blood on his clothes. Defendant subsequently burned his clothes on a grill. Defendant later informed Goble that he killed Boyd by stabbing her. Goble testified that he knew defendant carried a Leatherman knife and defendant informed Goble that he threw the knife "in the drink," which Goble understood to mean the river. On cross-examination, Goble acknowledged a burglary conviction and that he offered information about the offense in exchange for, *inter alia*, immunity in the case.

¶ 5    Munch testified that she was in a romantic relationship with defendant at the time of the offense, and had convictions for misdemeanor theft and possession of a stolen motor vehicle. Munch testified that, prior to going to Public Storage, she and defendant met with Goble and Abeyta at "Kim['s]" trailer, but Munch did not recall Kim's last name. Munch and defendant then drove to Public Storage in one vehicle, and Goble and Abeyta arrived in a different vehicle. Munch testified that defendant and Goble went to the locker area with Boyd; when they returned,

defendant was no longer wearing a shirt and was "very agitated." The group returned to Kim's trailer, where defendant and Goble burned defendant's clothes and knife. Later, Munch traveled to another storage locker facility in Plainview, Illinois, with defendant, who threatened to kill her. Munch did not tell police officers about the murder because she feared defendant.

¶ 6 On cross-examination, defense counsel published an excerpt from Munch's grand jury testimony from October 2014, and questioned her regarding her failure to tell the grand jury that the group arrived at the storage facility in separate vehicles. Counsel did not seek to admit the grand jury testimony into evidence. Munch testified that, in August 2014, she signed a proffer agreement where the State agreed not to prosecute her in exchange for what she disclosed about the incident.

¶ 7 Diane Bahr testified that she overheard defendant say that he "messed up" by killing a woman at a storage unit and, after he stabbed her, wiped the knife on her pants and put it in his pocket.[1]

¶ 8 Michael Sias testified that defendant called him and arranged to meet at Stroger Hospital, where defendant stated that "the girl got what she had coming and they will never convict him of it."

¶ 9 Bedford Park police lieutenant Steven Lindich testified that he observed Boyd lying face down in a pool of blood at the scene. Lindich identified a photograph of Boyd's body and commented that the photograph showed two "swipe marks" on the left and right buttocks of her jeans. Lindich never informed the press about the "swipe marks."

---

[1] Diane Bahr is also referred to as Diane Weiss throughout the record.

¶ 10    The court found defendant guilty of two counts of first degree murder. In ruling, the court noted that defense counsel essentially argued that "most or all" of defendant's associates were "thieves, burglars, and drug users or drug dealers," and thus "not worthy of belief on any relevant facts." The court noted that it used sufficient caution regarding Goble's and Munch's testimonies, but four witnesses claimed that defendant incriminated himself as Boyd's killer. The court found Bahr and Munch "very credible" in substance and presence.

¶ 11    Prior to argument on defense counsel's posttrial motions, defendant filed a *pro se* motion alleging defense counsel's ineffectiveness for failing to investigate certain exonerating evidence or impeach Bahr. In court, defendant additionally argued, *inter alia*, that counsel failed to investigate matters favorable to his defense and to impeach Munch. The court denied defendant's motion, finding his allegations involved trial strategy or were belied by the record. After a hearing, the court sentenced defendant to two concurrent terms of 45 years' imprisonment.

¶ 12    On direct appeal, defendant argued that (1) the trial court abused its discretion in admitting evidence of defendant's other bad acts; (2) defense counsel was ineffective for failing to impeach Munch with her grand jury testimony that she saw Goble walk with Boyd to the storage lockers but did not recall seeing defendant; and (3) the trial court violated the one-act, one-crime rule in convicting him of two counts of first degree murder. We vacated one of defendant's two convictions and otherwise affirmed the court's judgment. See *Podkulski*, 2022 IL App (1st) 192149-U. We declined to address the ineffective assistance of counsel claim because it implicated

grand jury testimony which was not admitted into evidence.[2] See *id.* ¶ 52. We commented that the issue was better suited for collateral proceedings. See *id.*

¶ 13    On February 2, 2021, while defendant's direct appeal was pending, defendant filed a *pro se* postconviction petition, arguing ineffective assistance of trial counsel. In the petition, defendant asserted that he was unable to procure affidavits because he was "incarcerated, indigent, and unable to locate witnesses without assistance" from the court. On March 25, 2021, defendant filed a motion requesting to be sent "all of [his] discovery," so that he could file a complete petition. On April 12, 2021, defendant filed a motion seeking time to amend his postconviction petition in light of new information he discovered.

¶ 14    During proceedings on April 16, 2021, defendant withdrew his February 2, 2021, petition. The court explained that defendant could refile the petition, which would be considered his initial postconviction petition. Defendant commented that he had moved to seek copies of the discovery from his trial so that he could attach documentation to his next petition, and remarked that he understood that he could not file a postconviction petition without supporting documentation. The court dismissed the motion due to lack of jurisdiction and stated that it could not help defendant but "[t]here are other ways" to obtain the necessary documentation.[3]

¶ 15    On July 7, 2021, while defendant's direct appeal was still pending, he filed the instant *pro se* postconviction petition. Relevant to this appeal, defendant argued that trial counsel was

---

[2] We noted that Munch's grand jury testimony was included with the record transmitted to this court, but because it was not part of the trial record, we could not consider it for the first time on direct appeal. See, *e.g.*, *People v. Sherrod*, 220 Ill. App. 3d 428, 436 (1991).

[3] On May 5, 2021, defendant filed a motion to reconsider the court's failure to address his motion for discovery, asserting that he wanted to file another postconviction petition but could not do so until he obtained supporting documentation. On June 11, 2021, the court denied defendant's motion due to lack of jurisdiction, and again informed defendant that another route existed for obtaining the necessary documentation, including requesting assistance from the assistant public defenders who represented him.

ineffective for failing to object to Lindich's use of the phrase "[k]nife swipe marks on victim's pants," and argued that nobody could "confirm what those marks were." Defendant also contended that counsel should have called Kimberly Williams, who would have testified, *inter alia*, that she did not know Munch, never loaned Munch her vehicle, and did not have a fire pit on her property.[4]

¶ 16    Defendant further argued that Munch was motivated to lie and, *inter alia*, told detectives that she did not see defendant accompany Boyd to the lockers but had seen Goble with Boyd. Defendant noted that he repeatedly fired his attorneys for not doing what he asked and did not agree with them. Lastly, defendant asserted that he was not provided discovery, and therefore, he only attached his own affidavit and a motion seeking discovery. Defendant stated that he was unable to obtain affidavits because he was "incarcerated, indigent, and unable to locate witnesses without assistance from the [c]ourt."

¶ 17    Defendant averred that he understood that his petition would "fail" without supporting documentation. He asserted that he had contacted every attorney who represented him at trial and on appeal by mail or phone to request copies of his "discovery," but received no reply or was told to ask other attorneys or to file motions in the trial court.

¶ 18    On September 2, 2021, the circuit court summarily dismissed defendant's petition in a written order, finding the issues frivolous and patently without merit. The court found that defendant's allegations were conclusory because he did not support them with evidence, records, or affidavits by the people referenced in the petition. The court found that defendant's explanation

---

[4] At trial, Munch did not testify that she drove Williams's vehicle to the storage unit; however, defense counsel impeached her with a grand jury statement where she stated that she drove Williams's vehicle. At trial, Goble testified that he and Abeyta drove Williams's vehicle to the storage unit, and Munch and defendant traveled in a different vehicle.

for the absence of supporting documentation was "to simply blame all of the attorneys who represented him at one stage or another." It noted that defendant requested assistance in locating witnesses, which was not a function of the court.

¶ 19    On appeal, defendant first argues that the circuit court erred in summarily dismissing his postconviction petition where he raised an arguable claim that trial counsel was ineffective for failing to call Williams, who would have testified that she did not know Munch, never let Munch borrow her vehicle, and did not have a fire pit on her property. He also contends that trial counsel was ineffective for failing to impeach Munch with her grand jury testimony that she only saw Goble walking with Boyd.

¶ 20    The Act provides a three-stage mechanism by which defendants can collaterally challenge their convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2020); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). At the first stage of proceedings, the circuit court must review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis in law or fact and is instead based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). A meritless legal theory is one that is completely contradicted by the record. *People v. White*, 2014 IL App (1st) 130007, ¶ 18. Fanciful factual allegations "include those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 17.

¶ 21    The petition need only present a limited amount of detail and is not required to set forth the claim in its entirety. *Edwards*, 197 Ill. 2d at 244. Although a *pro se* petitioner need only set forth the gist of a constitutional claim, this low threshold does not excuse the petitioner from

providing any factual detail at all regarding the alleged constitutional violation. *Hodges*, 234 Ill. 2d at 10. " '[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. " *Id.* (quoting *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008)).

¶ 22    In determining whether a petition presents a valid claim for relief, "the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding," as well as any affidavits, records, or other evidence supporting the allegations. 725 ILCS 5/122-2.1(c) (West 2020); 725 ILCS 5/122-2 (West 2020). Unsupported allegations in a postconviction petition are frivolous and patently without merit. *People v. Collins*, 202 Ill. 2d 59, 68-69 (2002). Our review of the summary dismissal of defendant's petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 23    To state a claim of ineffective assistance of counsel in first stage postconviction proceedings, a defendant must show that it is arguable that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) the defendant was prejudiced by counsel's deficient performance. *Id.* at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). More precisely, a defendant must show that it is arguable "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694). If the defendant fails to show he was arguably prejudiced by his counsel's performance, then we can dispose of the ineffective assistance claim on that basis alone. *People v. Wilson*, 2014 IL App (1st) 113570, ¶ 46.

¶ 24   Defendant first argues that trial counsel was ineffective for failing to call Williams, who would have testified that she did not know Munch, did not loan Munch her vehicle, and did not have a fire pit on her property.

¶ 25   At the outset, we note that defendant provided no exhibits supporting this claim, such as an affidavit from Williams attesting that she would testify as defendant claimed. Under the Act, a defendant must attach affidavits, records, or other evidence supporting his allegations or explain why they are not attached. See 725 ILCS 5/122-2 (West 2020). The purpose of the requirement is to "establish that the allegations are 'capable of objective or independent corroboration,' or else explain why they are not, and to identify 'the sources, character, and availability' of the alleged supporting evidence." *People v. Moore*, 2022 IL App (1st) 192290, ¶ 25 (quoting *People v. Allen*, 2015 IL 113135, ¶ 32).

¶ 26   Where a petitioner raises a claim of ineffective assistance of counsel for failure to call a witness, the allegations must be supported by an affidavit from that witness containing her proposed testimony. *People v. Brown*, 2015 IL App (1st) 122940, ¶ 52. Defendant's claims regarding counsel's ineffectiveness for failure to call Williams rely upon information outside the record, *i.e.*, how defendant asserts Williams would have testified had she been called. Because defendant did not produce documentation supporting that Williams would have testified in that manner, this allegation is not capable of objective or independent corroboration and, thus, is frivolous and patently without merit. See *Collins*, 202 Ill. 2d at 68-69.

¶ 27   Defendant nevertheless contends that he complied with the Act's pleading requirements because he explained why he was unable to attach supporting documentation. Defendant argues that he stated that he did not attach exhibits to the petition because he did not receive "discovery,"

and that he contacted every attorney who represented him on the trial and appellate levels, but they did not respond, told him to ask other attorneys, or told him to file motions in the trial court. Defendant contends his explanation was sufficient to advance the petition to the second stage of proceedings.

¶ 28    We disagree. Defendant's assertion as to why he could not attach evidence to his petition does not explain why he was unable to obtain Williams's affidavit. That is, defendant's alleged inability to access "discovery" from his trial would not bear on his ability to obtain an affidavit directly from Williams regarding her proposed testimony. Defendant has not established why he was not able to contact Williams to obtain an affidavit, other than his status as incarcerated and indigent. See *People v. Harris*, 2019 IL App (4th) 170261, ¶ 19 ("Because the Act contemplates defendants seeking postconviction relief are likely to be imprisoned, we hold imprisonment, by itself, cannot excuse a defendant's failure to attach supporting material to a postconviction petition."). Under these circumstances, defendant cannot show that counsel was deficient for not calling Williams and, therefore, this claim of ineffective assistance lacks merit.

¶ 29    Defendant also contends that trial counsel was ineffective for failing to impeach Munch with her grand jury testimony regarding whom she saw walking with Boyd at Public Storage.

¶ 30    Defendant's petition alleged that trial counsel was ineffective for failing to impeach Munch with her statements to detectives. However, even read liberally, the petition did not state a claim that counsel was ineffective for failing to impeach Munch with her statements to the grand jury.[5] The claim is therefore waived. See *People v. Jones*, 213 Ill. 2d 498, 508 (2004) ("our appellate

---

[5] Defendant raised the same claim regarding trial counsel's failure to impeach Munch with her grand jury testimony on direct appeal. See *Podkulski*, 2022 IL App (1st) 192149-U, ¶ 49. The direct appeal was pending at the time defendant filed the postconviction petition now at issue.

court is not free, *** to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition").

¶ 31    Lastly, defendant contends that he presented the gist of a constitutional claim that Lindich's testimony regarding the "knife swipes" on Boyd's pants was an inadmissible lay opinion, and that appellate counsel was ineffective for not raising the issue on direct appeal.

¶ 32    As a threshold matter, defendant framed this issue as ineffective assistance of trial counsel in his *pro se* petition, and never argued that appellate counsel was ineffective for not arguing the issue on direct appeal. Even liberally construing defendant's petition, we cannot infer a claim of appellate counsel error here. See *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13 ("[C]laims of ineffective assistance of appellate counsel cannot be inferred by postconviction appellate counsel simply because issues of trial error were not raised on direct appeal."). This is particularly so where defendant's direct appeal was pending when he filed his petition. Because defendant did not raise this issue in his petition and this issue was not decided by the circuit court, it is waived and, thus, we cannot review it. See 725 ILCS 5/122-3 (West 2020).

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.